**IN THE COURT OF APPEALS OF IOWA**

No. 21-0238
Filed May 12, 2021

**IN THE INTEREST OF S.J.,**
**Minor Child,**

**J.B., Mother,**
        Appellant,

**T.J., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

Parents separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Jamie L. Schroeder of The Sayer Law Group, P.C., Waterloo, for appellant mother.

Joseph G. Martin, Cedar Falls, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Tammy Banning of Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., Mullins, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

This mother and father have a long history of substance abuse, which was a contributing factor to having their parental rights terminated as to another child in December 2018. The mother also has a long history of mental-health issues. The father also has a lengthy criminal history. The child in interest came to the attention of the Iowa Department of Human Services (DHS) when she tested positive for amphetamines, methamphetamine, and marijuana at birth in April 2020. The father had recently been charged with conspiracy to manufacture methamphetamine, three counts of possession of precursors with intent to manufacture methamphetamine, and eluding. He also had pending charges of possession of methamphetamine and drug paraphernalia stemming from 2019. The parents refused to participate in safety planning. The State sought and obtained an order for temporary removal in early May.

In June, the parents stipulated to continued removal and a child-in-need-of-assistance adjudication. While the father participated in substance-abuse and mental-health evaluations in June, he never attended recommended treatment. The mother also underwent substance-abuse and mental-health evaluations in June and was recommended to attend outpatient treatment. While she did participate in some sessions during the proceedings, she was generally inconsistent in attending.

By late July, the parents had no-showed to several scheduled drug tests. Due to the COVID-19 pandemic, visits with the child were being conducted virtually. The parents requested in-person visits, and DHS agreed to pursue the same if the parents submitted to drug testing, which they failed to do.

By the time of the dispositional hearing in August, the father had a warrant out for his arrest for violating the terms of his probation, pursuant to which he was arrested later that month. The father continued to no-show for drug testing through the time he was arrested. And, while the mother was participating in family treatment court, her participation was minimal. The mother continued to not appear for drug testing until early September. That month, she tested positive for methamphetamine, amphetamines, and THC on four separate occasions. Her attendance at visits and participation in therapy were also inconsistent. Of the six drug tests the mother actually appeared for in October and November, she tested positive for methamphetamine, amphetamines, and THC each time. In November, the State petitioned for termination of the parents' parental rights upon DHS's recommendation.

The matter proceeded to a termination hearing in early January 2021. By this point, the mother had continued to test positive for illegal substances at each drug test she appeared for throughout December and January, including just one week before the termination hearing. Of the sixty-six times the mother was asked to submit to drug testing, she only did so twenty-three times. She tested positive for methamphetamine, amphetamines, and THC all twenty-three times, and she tested positive for cocaine on one occasion. The father remained incarcerated. Even prior to his arrest, the father never consistently participated in visits. When he did, his participation was minimal, and he struggled to stay awake, an issue the mother also exhibited. The father discontinued attending visits altogether when the warrant was issued for his arrest. The father never submitted to drug testing.

Ultimately, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2020), and the father's rights under section 232.116(1)(e), (g), and (h). The parents separately appeal. The mother requests the application of the permissive exception to termination contained in Iowa Code section 232.116(3)(c). Both parents argue the court erred in not granting additional time to work toward reunification.

Appellate review of orders terminating parental rights is de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021); *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The mother requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c), which allows the court to forego terminating parental rights upon "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." While we acknowledge a bond between the mother and child, which can be characterized as minimal at best given the child's young age and removal shortly after birth, upon our de novo review, we conclude the mother failed to meet her burden to show "that the termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish an exception to termination).[1]

---

[1] To the extent the mother passively suggests termination is contrary to the child's best interests, we disagree. *See* Iowa Code § 232.116(2).

Both parents request an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that a child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

As to her request for additional time, the mother "argues her participation in services had improved in the months before the termination trial and she was actively working towards reunification." She claims her alleged improvement would have continued and the child could be placed in her care within six months. What troubles us is that while the mother made minimal improvements as to her participation in services in the months leading up to the termination hearing, she still continued to test positive for illegal substances. The mother's substance abuse is the driving factor in the continuing need for removal. Despite the provision of services, she made absolutely no progress on maintaining sobriety. Given the mother's long history of substance abuse and unquestionably continuous use throughout these proceedings, she would need to demonstrate maintenance of sobriety for a long period of time before the child could be placed in her care, certainly longer than six months. And, while the mother blames the COVID-19 pandemic for her failure to address her substance abuse, the issue was prevalent in a non-pandemic world before the outbreak. So we are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month

period." Iowa Code § 232.104(2)(b). We decline the mother's request for an extension.

For his part, the father argues the court should have presumed him innocent of his pending charges and assumed he would be available to serve as an appropriate parent after his trial in April 2021.[2] He also seems to suggest he was unable to participate in services because his "availability" was hindered. But the father was only unavailable because of his incarceration. Even allowing the father his presumption of innocence, he did not meaningfully participate in services prior to his arrest. And assuming the father would be released after his April 2021 trial, he, like the mother, has a long history of substance abuse and would need to demonstrate sobriety for a long period of time in the community after his release. We are unable to conclude that could be accomplished within six months of the court's termination order, especially given the father's incarceration continuing until at least late April. We also deny the father's request for an extension.

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**

---

[2] The court's ruling offers no indication that it predicted the father would be found guilty of his pending charges.